UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PAUL MORALES,

    Plaintiff,

v.                                                              CASE NO. 6:15-cv-1453-Orl-37DCI

JERRY L. DEMINGS, et al.,

    Defendants.

_____/

## ORDER

This cause is before the Court on the Third Amended Civil Rights Complaint filed by Paul Morales (Doc. 16) and the Motion for Summary Judgment filed by Defendants Jerry L. Demings and Leonard H. Phillips (Doc. 26). Plaintiff has filed a Response in Opposition to the Motion (Doc. 27) and Defendants have file a Reply (Doc. 36).

### I. BACKGROUND

Plaintiff, a prisoner in the State of Florida proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Defendants for claims arising out of his arrest in Orlando, Florida on September 13, 2011 (Doc. 16 at 5-6). According to Plaintiff, after "an evening of drinking with friends" he determined that he was unable to properly drive without "drifting in and out of his lane." *Id.* at 5. Plaintiff parked his vehicle at an unknown home and walked to a nearby store. *Id.* at 6. Plaintiff alleges that he walked through an open field and began to feel dizzy and nauseated, so he decided to lie down in the field. *Id.* After a few minutes, Plaintiff heard yelling and a dog barking. *Id.* Plaintiff

heard someone tell him to get up, and Plaintiff observed a police officer, later identified as Deputy Sheriff Leonard H. Phillips ("Defendant Phillips") of the Orlando Sheriff's Office and his canine. *Id.*

Plaintiff immediately attempted to comply with Defendant Phillips' directive; however, Plaintiff states that "without provocation" Defendant Phillips commanded the canine to attack Plaintiff. *Id.* Plaintiff contends that the canine attacked and tried to drag him for one to two minutes before Defendant Phillips ordered the canine to release him. *Id.* Plaintiff was transported to the Orlando Regional Medical Center, where his injuries were treated, and later to the Orange County Jail. *Id.* Plaintiff was charged with burglary of a dwelling, although the charges were later dropped. *Id.* at 7; Doc. 25-5 at 9.

Defendant Phillips attests that during the early morning hours of September 13, 2011, he was on duty and assigned to the canine unit (Doc. 26-1 at 1). He was advised via dispatch of a residential burglary that occurred at 1405 Frontier Drive, Orlando, Florida. *Id.* There were two suspects, a female who was apprehended at the scene by the victim and a male suspect who fled the scene in a black Nissan Pathfinder SUV. *Id.* at 2. Another deputy located the suspect based on the victim's description of the vehicle and driver and followed the vehicle to a driveway at 1339 39th Street, Orlando, Florida. *Id.* The driver of the vehicle, later identified as Plaintiff, fled on foot. *Id.* Defendant Phillips attests that when he arrived at the vehicle's location, he deployed his canine on a twenty foot lead or leash. *Id.* The canine tracked from the vehicle, and Defendant Phillips gave two loud

warnings, stating, "Sheriff's Office K9 come out or I'll send the dog." *Id.* Defendant Phillips stated that he gave several additional warnings as they continued to track. *Id.*

According to Defendant Phillips, he went through a wooded area, and canine alerted near a fence line. *Id.* Defendant Phillips attests that he observed Plaintiff "lying in a heavily wooded area with his back to [Defendant Phillips] and his shirt pulled over his face. . . ." *Id.* Defendant Phillips was on the other side of the fence, and he attests it was apparent that Plaintiff was aware of his presence but ignored his commands. *Id.* Defendant Phillips attests that he cut a hole in the fence and again gave a warning that if Plaintiff did not come out he would send the canine to Plaintiff. *Id.* at 3. Upon hearing no response, Defendant Phillips deployed the canine. *Id.*

Defendant Phillips attests that he observed Plaintiff grabbing the canine in an attempt to free himself. *Id.* The canine initially bit Plaintiff on the leg but then released him and relocated to Plaintiff's upper arm. *Id.* Defendant Phillips attests that he directed Plaintiff to stop resisting. *Id.* Plaintiff complied, and Defendant Phillips directed the canine to release Plaintiff. *Id.* Defendant Phillips attests that the canine was biting Plaintiff for no longer than ten to fifteen seconds. *Id.* The Orange County Fire Department responded to treat Plaintiff's injuries. *Id.* Defendant Phillips also attests that the victim of the burglary and another witness were transported to the scene, and while the burglary victim could not positively identify Plaintiff as the perpetrator, the witness stated that he had observed Plaintiff running away from the burglary location. *Id.*

Plaintiff alleges that his Fourth and Fifth Amendment rights to be free from an unreasonable search and seizure were violated (Doc. 16 at 5). Specifically, Plaintiff contends that Defendant Phillips used excessive force during the arrest by directing the canine to attack him. *Id*. Plaintiff also contends that Defendant Phillips had no probable cause to arrest him. *Id.* at 7.

## II.     STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1)(A).

The nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.   DISCUSSION[1]

Plaintiff alleges that Defendants violated his Fourth and Fifth Amendment rights by using excessive force against him and arresting him without probable cause (Doc. 16 at 5-7). As an initial matter, Defendants seek dismissal of Plaintiff's Fifth Amendment claim because excessive force claims are properly characterized as invoking the protections of the Fourth Amendment (Doc. 26 at 17-18). The Fifth Amendment applies to federal entities and actors, whereas the Fourteenth Amendment applies to the States. *See Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991). Therefore, Plaintiff's claims against Defendants for false arrest and excessive force are properly considered as Fourth and Fourteenth Amendment claims. Consequently, Plaintiff's Fifth

---

[1] To the extent Plaintiff argues that the Court should not consider Defendant Phillips' affidavit as it was made in bad faith and for the purposes of delay his request is denied (Doc. 27 at 5-6). Although Plaintiff contends that the affidavit contains hearsay, the Court disagrees. Defendant Phillips' affidavit contains statements based on his personal knowledge that were relayed to him via other sheriff deputies or police communications (Doc. 26-1). *See Terrell v. Smith*, 668 F. 3d 1244, 1252 (11th Cir. 2012).There is no indication that the affidavit was made in bad faith or for the purpose of delay or that it should be stricken from the record. *See* Fed. R. Civ. P. 56(h) (providing that a court may subject a party who submits and affidavit or declaration in bad faith or solely for delay to payment of the opposing parties' costs or other sanctions).

Amendment claim is subject to dismissal. *See Robinson v. District of Columbia*, 736 F. Supp. 2d 254 (D.D.C. 2010) ("A litigant may make a . . . due process claim for police misconduct so long as [his] claim is not covered by a specific constitutional provision, such as the Fourth or Eighth Amendment.").

Defendants argue that they are entitled to qualified immunity because there was no constitutional violation (Doc. 26 at 6-14). In support of this contention, Defendants state that the force used against Plaintiff was not excessive and the arrest was supported by probable cause (Doc. Nos. 26 at 6-7, 36 at 1-2). Defendant Demings also contends that he is not liable in his official capacity because Plaintiff has not demonstrated a policy or procedure that was the moving force behind any alleged constitutional violations (Doc. 26 at 14-16).

### A. Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation omitted). "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (citations omitted) (quotations omitted). To benefit from the qualified immunity doctrine, a

defendant must first prove he or she was acting within the scope of his or her discretionary authority. *See Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

Once a defendant shows that he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003). The Supreme Court has set forth a two-part test for the qualified immunity analysis. First, a court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If Plaintiff's version of the facts set forth the violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the alleged conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). It is within a court's discretion to decide which prong of the qualified immunity analysis to address first. *See Pearson*, 555 U.S. at 236.

As an initial matter, there is no dispute that Defendants were acting within their discretionary authority for qualified immunity purposes (Doc. 26 at 6). Therefore, the Court will consider whether a constitutional violation occurred.

   **1. False Arrest**

"Under the Fourth Amendment, an individual has a right to be free from 'unreasonable searches and seizures' . . . . [and] an arrest is a seizure of a person." *Skop v. City of Atlanta*, 485 F.3 d1130, 1137 (11th Cir. 2007). The reasonableness of a seizure or arrest turns on the presence or absence of probable cause. *Id.* "'Probable cause to arrest exists when law enforcement officials have facts and circumstances within their

knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime.'" *Id.* (quoting *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002)). Furthermore, the "existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).

Defendant Phillips contends he had actual probable cause to arrest Plaintiff (Doc. 36 at 2). Defendant Phillips attests that he received a radio communication from dispatch indicating that a Hispanic suspect fled the scene of a burglary in a black Nissan Pathfinder SUV (Doc. 26-1 at 1-2). According to Defendant Phillips, a patrol officer located the vehicle and followed it until it parked at 1339 39th Street, where the suspect exited the vehicle and fled on foot. *Id.* at 2. Defendant Phillips attests that he used his canine to track from the black Nissan Pathfinder SUV a wooded area, where he found the suspect, later identified as Plaintiff. *Id.* at 2. Defendants also provides the Orange County Sheriff's Office Incident Report, which indicates that the victim of the burglary and another eye witness gave a physical description of the escaping suspect and a description of the black Nissan Pathfinder SUV (Doc. 26-2 at 3). Furthermore, the eyewitness identified Plaintiff as the escaping suspect. *Id.*

Based on the undisputed facts in the record, no genuine issue of material fact exists with regard to this matter. Based on the facts and circumstances within his knowledge at the time the crime occurred, Defendant Phillips had arguable probable cause to arrest Plaintiff for burglary. *See Skop*, 485 F.3d at 1137; *Kingsland*, 382 F.3d at 1226. Therefore,

Plaintiff has failed to allege a constitutional violation, and Defendant Phillips is entitled to qualified immunity with regard to this claim.

Furthermore, Defendant Demings is also entitled to qualified immunity on Plaintiff's false arrest claim in his individual capacity as the material undisputed facts reflect that he was not personally involved in Plaintiff's arrest. *See Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010) (stating that to establish liability pursuant to § 1983, a plaintiff must "show proof of an affirmative causal connection' between a government actor's acts or omissions and the alleged constitutional violation, which 'may be established by proving that the official was personally involved in the acts . . . .") (quotation omitted).

The Court will now turn to the question of whether there was a constitutional violation of the Fourth Amendment in utilizing a canine to effectuate the arrest, and if so, whether the violation was clearly established at the time such that Defendant Phillips was on notice that on these facts, the use of the canine amounts to excessive force.

    **2.**    **Excessive Force**

Excessive force that occurs during an arrest is analyzed under the reasonableness standard set forth in the Fourth Amendment. *See Graham v. Connor*, 109 S. Ct. 1865, 1971-72 (1989); *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010). In assessing whether a law enforcement officer used excessive force, courts must "ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (quotation omitted). "Fourth Amendment

jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion . . . ." *Graham*, 490 U.S. at 396.

To determine whether the force used is objectively reasonable, the Supreme Court has held that it must "carefully balance the nature and quality of the intrusion on the individuals Fourth Amendment interests against the countervailing governmental interests at stake under the facts of the particular case." *Graham*, 490 U.S. at 396. The force employed is measured against several factors, including: "'the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether the suspect actively resisted or attempted to evade arrest by flight.'" *Salvato v. Miley*, 790 F.3d 1286 (11th Cir. 2015) (quoting *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir. 2010)).

Applying the objectively reasonable test to the facts of the case, the Court concludes that Plaintiff cannot demonstrate a violation of his Fourth Amendment rights. The record demonstrates that Defendant Phillips' use of his canine was objectively reasonable. The police reports indicate that Defendant Phillips had reason to believe that a burglary had occurred and a suspect was observed fleeing from the scene of the crime, driving away in a black Nissan Pathfinder SUV, parking at a house located at 1339 39th Street, exiting the vehicle, and leaving the area on foot (Doc. 26-2). Defendant Phillips attests that his canine tracked the suspect from the vehicle through a wooded area at night, and Defendant Phillips alerted the suspect to his and his canine's presence (Doc.

26-1 at 3). The suspect failed to respond to Defendant Phillips' commands, and the deputy had concern for his safety and deployed his canine (Doc. 26-1 at 3-4).

At the time of the incident described in the complaint, the Eleventh Circuit issued precedent that is factually similar to this case. *See Crenshaw v. Lister*, 556 F.3d 1283 (11th Cir. 2009). In *Crenshaw*, the court extended qualified immunity to police officers who followed a suspect believe to have committed a serious crime, who left his vehicle and fled on foot into a wooded area and was ultimately located and apprehended by the use of a canine that caused serious injury in effectuating the arrest. *Id.* at 1292-93. The Eleventh Circuit concluded that the use of the canine was objectively reasonable and did not violate the plaintiff's Fourth Amendment rights. *Id.*

Considering the facts in a light most favorable to Plaintiff, they establish that he parked his car at a private residence unknown to him at night and wandered in a drunken state through a residential area where he lay down in the dark with his shirt pulled over his head. Defendant Phillips believed Plaintiff was the fleeing suspect from the burglary, and having lost sight of Plaintiff and receiving no response to his verbal commands, deployed his canine. Similar to *Crenshaw*, the Court concludes that Defendant Phillips' conduct was objectively reasonable. *See also Grimes v. Yoos*, 298 F. App'x 916, 922-24 (11th Cir. 2008) (concluding that the use of a canine was objectively reasonable where the plaintiff had allegedly committed a burglary, was trying to flee, hid in vegetation and bushes, and the officers were concerned for their safety).

Even assuming a material dispute as to whether the use of the canine was

objectively reasonable, Defendant Phillips would nonetheless be entitled to qualified immunity unless the constitutional violation was clearly established law at the time of the incident. To determine whether a right was clearly established at the time of the alleged violation, the court must decide "whether it would be *clear* to a reasonable officer that his conduct was unlawful in the situation he confronted." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (quotation omitted) (emphasis in original). There is no bright line rule for identifying when force is excessive, and in the absence of a controlling or materially similar case, qualified immunity will apply. As noted above, *Crenshaw* is materially similar to the facts at issue here. Therefore, even if Defendant Phillips acted unreasonably, it was not obvious that deployment of the canine in these circumstances was unlawful, excessive conduct. Thus, assuming a constitutional violation occurred, it was not clearly established. Defendant Phillips is entitled to qualified immunity on Plaintiff's excessive force claim.

Furthermore, Defendant Demings is also entitled to qualified immunity in his individual capacity on Plaintiff's excessive force claim because the material undisputed facts reflect that he was not personally involved in the excessive force. *See Brown*, 608 F.3d at 737.

### B. Policy or Custom

The sheriff may not be held liable solely on the basis of an employee's actions; instead liability is appropriate only where a supervisor personally participated in the alleged constitutional conduct or adopted a policy or practice that violates a plaintiff's

constitutional rights. *Monnell v. Dep't of Social Serv. of the City of New York*, 436 U.S. 658 (1978); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003); *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) (noting that supervisory officials cannot be held liable for its employees on a theory of respondeat superior). "'A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.'" *Fields v. Corizon Health, Inc.*, 490 F. App'x 174, 182 (11th Cir. 2012) (quoting *Goebert*, 510 F.3d at 1332); *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011).

Further, a "single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees . . . ." participating in the alleged unconstitutional conduct. *See Craig v. Floyd County*, 643 F.3d 1306, 1311 (11th Cir. 2011). A plaintiff must prove causation by demonstrating that a supervisor's custom or policy "result[s] in deliberate indifference to constitutional rights when facts support an inference that the supervisor directed the subordinates to act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360. (citations omitted).

Plaintiff has not provided the Court with any evidence indicating that Defendant Demings adopted a policy or custom to falsely arrest suspects or use excessive force. Even assuming such a policy had been adopted, Plaintiff has not demonstrated that any such policy resulted in a constitutional violation. As noted *supra*, Defendant Phillips did not violated Plaintiff's Fourth Amendment rights. Therefore, Defendant Demings is not liable in his official capacity as the Sheriff of Orange County.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment (Doc. 26) is **GRANTED**. This action is **DISMISSED** with prejudice.

2. The Clerk shall enter Judgment in favor of Defendants Phillips and Demings and against Plaintiff and close the case.

**DONE AND ORDERED** in Orlando, Florida, this 6th day of March, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
OrlP-3 3/6
Counsel of Record
Paul Morales